RONALD LEROY ROBINE AND KATHRYN ANN ROBINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Robine v. Commissioner
Docket No. 1021-83.
United States Tax Court
T.C. Memo 1986-350; 1986 Tax Ct. Memo LEXIS 258; 52 T.C.M. (CCH) 59; T.C.M. (RIA) 86350; August 5, 1986. *258 Held: Deduction for educational travel determined. William D. Gilbride and Juliet C. Hafford, for the petitioners. Timothy S. Murphy, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in the Federal income tax liability of petitioners for their calendar year 1980 in the amount of $3,185.57. The single issue for decision is the allowability of the deduction claimed by petitioners in the amount of $7,958.96 as a business expense for educational travel. For convenience, our Findings *259 of Fact and Opinion are combined. Some of the facts have been stipulated and they are so found. at the time the petition in this case was filed petitioners resided in Dearborn, Michigan. Both petitioners are and in 1980 were elementary school teachers in the Dearborn, Michigan school system. During the year 1980, and for 23 of the past 25 years, Ronald Leroy Robine (Robine) taught the fifth grade. Kathryn Ann Robine (Mrs. Robine) has been a second grade teacher for the past 8 years, but she has taught other grades. In their respective classes, each of petitioners teaches among other subjects, social studies. In the second grade, the principal emphasis is upon people -- family and living. Fifth grade social studies on the other hand concentrates on the United States, starting with our earliest inhabitants and concluding with a discussion of each of the several states. In the beginning of fifth grade social studies there is some discussion of those early people who came across the Bering Straits into Alaska. Towards the end of the fifth grade year approximately 2 weeks is spent on Alaska as a state. The second grade does not include any such regular discussion of any of the *260 fifth states. Through Hallissey Travel in Dearborn, Michigan, petitioners arranged a trip during July and August 1980, the cost of which petitioners deducted on their 1980 tax return. The primary objective of the trip was to visit parts of Alaska. Petitioners traveled first to Seattle, Washington, and Vancouver, British Columbia, for approximately 3 days, then to Alaska for approximately 21 days, and finally for 5 days in the Canadian Rockies. Seattle is a necessary stopover between Detroit, Michigan, and Alaska. [1] In Seattle petitioners visited James Park to view a display of west coast indian totem poles and wooden lodges. Robine took a number of pictures at James Park. The balance of the time in the Seattle area was spent visiting for pleasure the English section of Vancouver, British Columbia. The Alaskan tour was part of a regular tour arranged by Princess Tours which took petitioners to Glacier Bay, Nome, Kotzebue, Point Barrow, Fairbanks, and to the Alaskan pipeline. The tour was not specifically set up for teachers. None of the rest of the small *261 group of 13 people who were together throughout the Alaskan portion of the trip was a school teacher. Different types of Eskimoes were to be seen at the first three locations, Point Barrow being the most northerly point in Alaska which petitioners could visit. Robine also made a particular point of being able to visit Glacier Bay in part because a film of Glacier Bay was regularly shown to his fifth grade students. While in the Canadian Rockies, Robine was able to compare the effects of erosion in those mountains with similar erosion in the Alaskan glaciers. There is no other explanation of the educational connection of the Canadian Rockies portion of the trip. The textbooks furnished to Robine by the school system generally take a number of years to be prepared, approved, and distributed, so that they are always somewhat out of date. It is also somewhat difficult to maintain the attention span of fifth grade students. Thus, the ability to inject into the teaching of social studies photographs, slides, postcards, artifacts and like, together with personal anecdotes, facilitates teaching. During this trip Robine took approximately 800 slides and he has used approximately half *262 of them in his teaching. Information obtained by Robine on his trip to Alaska has enabled him, for example, to explain artificialities in the Glacier Bay film, how sled dogs are fed and why their use is disappearing, and how the Alaska pipeline is protected from the effects of bullets fired at it. There is no evidence that Mrs. Robine uses such props in her teachings or that study of Alaska plays an important role in the second grade. However, as a teacher Mrs. Robine benefited from the Alaskan tour. During the Alaska part of the trip, each petitioner utilized all opportunities to visit museums and cultural centers, to see the Eskimoes in their villages and in their normal daily pursuits, and in general, to obtain information about the Alaskan people and the State. At Fairbanks, petitioners together enrolled in a college course for credit given by the University of Alaska based on educational travel. The Alaskan tour complied with those travel requirements. In addition, to obtain course credit each participant was required to produce a paper. Robine did this for 1 hour's credit. [2] The purpose served by this course was the intangible benefit derived from having it on Robine's *263 Dearborn school system record. The Dearborn school system imposes no requirement on its teachers for job-related travel but does encourage such travel. The trip had no beneficial effect on the salary of either petitioner. The school system did not reimburse petitioners for any part of the cost of the trip. Petitioners failed to keep any sort of diary or log of the trip and introduced in evidence during the trial neither substantiation for the aggregate deduction claimed nor any breakdown of the aggregate into specific items. The itinerary provided to petitioners by the Alaska Travel Bureau shows that petitioners' traveled by air from Seattle to Anchorage and by air from Anchorage to Kotzebue, from Kotzebue to Nome, and from Nome back to Anchorage. Travel was by rail from Anchorage to McKinley and thence by rail to Fairbanks. *264 The travel from Fairbanks to Point Barrow and return was by air, and by bus to White Horse and to Scagway. From Scagway to Vancouver travel was on a ship, the "Island Princess." The trip to the Canadian Rockies was by train. Respondent on brief correctly pointed out that petitioners had failed to substantiate any of the claimed expenses as required by section 274. [3] At the invitation of the Court, petitioners moved to reopen the record and to add to it some documentation. The motion was granted. Based thereon, we find that each of petitioners paid United Airlines the sum of $301 for roundtrip fare between Detroit and Seattle and paid Alaska Airlines $501.48 for fare from Seattle to Anchorage to Kotzebue to Nome and back to Anchorage. In addition, petitioners together paid Hallissey Travel in Dearborn, Michigan, the aggregate sum of $6,141.27. Petitioners also paid the University of Alaska the sum of $190 as the course fee for both petitioners. Several thousand dollars of additional expenses are documented but we cannot determine from this record how to allocate any part of these items either between the petitioners, to any specific part of the trip or to meals, lodging, transportation, *265 or any activity. The trip took a total of 28 days, 3 days in Seattle, 21 days in Alaska, and 5 days in the Canadian Rockies. Petitioners' initial position was that all of the expenses of the trip from Dearborn to Alaska and return including the period in Vancouver and in the Canadian Rockies were deductible for both petitioners as educational expenses. [4] Under these regulations, the deductibility of petitioners' travel expenses turns on the factual question of whether or not the major portion of the activities in which either petitioner engaged during the travel was of such a nature as to directly maintain or improve skills required of either of them in their employment. Marlin v. Commissioner,54 T.C. 560, 565 (1970). The burden of proof is upon petitioners. Rule 142. *266 We conclude that 1 day in Seattle to visit James Park and the 21 days in Alaska were business-related travel for Robine. The connection between that portion of the travel and Robine's fifth grade teaching is demonstrated. See Morandini v. Commissioner,T.C. Memo. 1983-728, 52 P-H Memo T.C. par. 83,728, 47 T.C.M. 537. The evidence fails to convince us that the balance of the trip for Robine was business connected. With respect to Mrs. Robine, petitioners have failed to prove that any of the travel was business related. See, e.g., Takahashi v. Commissioner, 87 T.C.     (July 21, 1986). As she candidly stated during her testimony, the trip was an educational experience "like being in the courtroom today." That benefit to Mrs. Robine from this trip cannot be said to "directly maintain or improve the skills required in her employment." Respondent's regulations further provide that the substantiation requirements of section 274(c) and (d) must be met. Section 1.162-5(e). Moreover where section 274 is applicable, we are precluded from applying the Cohan rule ( Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930)). Sanford v. Commissioner,50 T.C. 823, 828 (1968), *267 affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969); Buddy Schoellkopf Products, Inc. v. Commissioner,65 T.C. 640, 645 (1975).However, respondent's regulations do permit the allocation of an expenditure on a pro rata basis. Section 1.274-5(c)(6)(ii), Income Tax Regs. Since we have no evidence on which to make a different allocation of the payment to Hallissey Travel, that aggregate sum must be divided between Robine and Mrs. Robine equally and then the deductible portion of Robine's share separated from the nondeductible personal portion on the basis of the number of days. Robine's business travel consumed 22 out of the 28 days. Thus Robine is entitled to deduct $802.48 as the cost of air fare and 22/28 of his share of the payment to Hallissey Travel. In addition the 1 hour of college credit from the University of Alaska is allocated one-half to each petitioner. Robine is entitled to a $95 deduction for this expenditure. Since Mrs. Robine did not show that she undertook any of the course work required, or that she received any credit for the course, she did not prove her entitlement *268 to a deduction. Thus we conclude that she abandoned the course. While we are aware that Robine incurred additional deductible costs, he has failed to substantiate those costs in the manner required by respondent's regulations. [5]
Decision will be entered under Rule 155.
Footnotes
1. We take judicial notice of the fact that in 1980 there were no direct flights from Detroit, Michigan, to Alaska.↩
2. It is not clear from this record whether or not Mrs. Robine obtained any college credit. There is no indication that she completed the required paper. Although the check payable to the University of Alaska includes the legend "Course fee for Ronald & Kathryn Robine," we conclude that Mrs. Robine abandoned any effort to complete the college course.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
4. Respondent's regulations insofar as pertinent provide as follows: Sec. 1.162-5 Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education -- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or * * * (d) Travel as a form of education. Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. * * * (e) Travel away from home. (1) If an individual travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals, and lodging while away from home are deductible. However, if as an incident of such trip the individual engages in some personal activity such as sightseeing, social visiting, or entertaining, or other recreation, the portion of the expenses attributable to such personal activity constitutes nondeductible personal or living expenses and is not allowable as a deduction. If the individual's travel away from home is primarily personal, the individual's expenditures for travel, meals and lodging (other than meals and lodging during the time spent in participating in deductible education pursuits) are not deductible. Whether a particular trip is primarily personal or primarily to obtain education the expenses of which are deductible under this section depends upon all the facts and circumstances of each case. * * *↩
5. Most of the exhibits attached to petitioner's Motion to Reopen the Record were not specific as to purpose or activity. Also a statement apparently prepared by Robine cannot be considered for any purpose although included with the other documents. The exhibits which we have considered were copies of checks payable to Hallissey Travel and to the University of Alaska and copies of airline passenger coupons. Respondent has not objected to the authenticity of these documents.↩